# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

In re:                    )
                          )
DAVID AND SANDRA BYRD     )      Case No. 08-02661-TOM-7
                          )
                          )
        Debtors.          )

**\*NOT INTENDED FOR PUBLICATION\***

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Sanctions (hereinafter, the "Motion") filed by the debtors, David and Sandra Byrd (hereinafter, the "Debtors") against Regional Paramedical Services (hereinafter, "RPS"). Appearing at the January 21, 2009 final hearing were David Byrd (hereinafter, the "Debtor") and D. M. Samsil, attorney for the Debtor (hereinafter, "Mr. Samsil"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[2] This Court has considered the pleadings, arguments of counsel, and the law and finds and concludes as follows.[3]

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2)(A) provides:
> (b)(2)Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate[.]

[The Court assumes the Motion falls under §362(k) and §524(a)(2) even though the motion does not expressly list a code section; the court also assumes this is an action to enforce the automatic stay and the discharge injunction.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant

## I. FINDINGS OF FACT[4]

On or about March 15, 2008, the Debtor incurred medical expenses owed to RPS in the amount of $560.00. Blue Cross Blue Shield of Alabama covered $137.60 of these expenses, leaving a balance of $422.40. See Exhibit 1. Later, the Debtor received a billing statement from RPS dated May 15, 2008, indicating that Account 2000033925 which bore the Debtor's name and had a balance of $422.40 (the "Account") was immediately due. See Exhibit 3.

The Debtor and his wife filed this voluntary chapter 7 bankruptcy case on June 3, 2008. Throughout the case, RPS received notice from this Court by first class mail, including notice of the meeting of creditors mailed on June 6, 2008. Proceeding No. 15.[5] Additionally, the Debtors listed the Account under Schedule F. See Exhibit 2. Following the filing of this bankruptcy case, RPS continued to attempt to collect on the Account through demand letters and telephone calls. The Debtors received two letters from RPS dated July 17, 2008 and August 14, 2008 demanding the Account be paid in full. See Exhibits 4 and 5. On October 2, 2008, this Court entered an order discharging the Debtors. Proceeding No. 44. Following the discharge, the Debtors received another demand letter from RPS dated November 6, 2008. See Exhibit 6. The Debtor testified that he faxed the November 6, 2008 letter back to RPS. Additionally, the Debtor testified that following the bankruptcy filing, he and his wife received several phone calls from RPS attempting to collect on the Account. He received the last phone call a couple of weeks ago. The Debtor testified that each time the Debtors received a call, RPS was informed of the Debtors' bankruptcy case and directed to call Mr. Samsil. The Debtor further testified that the continued attempts by RPS to collect on the

---

to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir. Unit B July 1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

[5] Notice from this Court was mailed to RPS at the following address: P.O. Box 3147, Jasper, Alabama 35502-3147.

Account caused him and his wife much emotional distress and worry. Mr. Samsil noted on the record at the final hearing that he had worked between four and five hours on this matter for the Debtors, and that his nonbankruptcy billing rate is $150.00 per hour.[6] This Court mailed notice of this final hearing to RPS on January 18, 2009. Proceeding No. 53. RPS filed no response to the Motion and failed to appear at the final hearing.[7]

## II. CONCLUSIONS OF LAW

### A. Violation of the Automatic Stay

To provide for orderly liquidation or reorganization the Bankruptcy Code stays, *inter alia*, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). This automatic stay arises by operation of law at the moment the bankruptcy petition is filed regardless of whether affected parties have notice of the filing. 11 U.S.C. § 362(a). See also, e.g., Ford v. A.C. Loftin, et al., (In re Ford), 296 B.R. 537, 542 (Bankr. N.D. Ga. 2003).

Should a creditor violate the automatic stay, section 362(k)(1) of the Bankruptcy Code provides "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The Eleventh Circuit has adopted a two-part test to determine whether a defendant willfully violated the automatic stay. See Jove Eng'g, Inc. v.

---

[6] Mr. Samsil's work on this matter included drafting the Motion, meeting with the Debtors and making two court appearances.

[7] This Court originally scheduled a hearing on the Motion for January 15, 2009, and mailed notice regarding same to RPS on December 18, 2008. Proceeding No. 49. RPS failed to file a response and appear at the January 15, 2009 hearing. The Debtor and Mr. Samsil appeared at that hearing, but this Court, in order to assure RPS ample opportunity to respond, did not rule on the matter. Instead, the Court set the matter for final hearing and show cause on January 21, 2009. Despite the time and opportunity given by this Court, RPS continues to ignore the proceedings before it.

I.R.S. (In re Jove), 92 F.3d 1539, 1555 (11th Cir. 1996). The test is whether the creditor "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay." Id. There is no specific intent requirement for a violation of the automatic stay to be willful. Caffey v. Russell (In re Caffey), 384 B.R. 297, 307 (Bankr. S.D. Ala. 2008). Rather, for purposes of §362(k)(1), a creditor acts willfully when he acts deliberately with knowledge of a bankruptcy petition even if his actions are not intentionally meant to violate the stay. Id.; In re Parker, 279 B.R. 596, 603 (Bankr. S.D. Ala. 2002). Violation of the automatic stay is presumed deliberate if the creditor has actual notice of the bankruptcy. Spinner v. Cash In A Hurry, LLC (In re Spinner), 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008). Upon obtaining knowledge of the bankruptcy, the creditor bears the burden of not violating the automatic stay. Caffey, 384 B.R. at 307.

In this case, RPS possessed actual knowledge of the Debtors' bankruptcy case and willfully violated the automatic stay. The Debtors scheduled their debt to RPS, and RPS received mailed notices from this Court throughout the case. Having received notice, RPS bore the burden of not violating the automatic stay. However, RPS disregarded its notice of the stay and proceeded to deliberately continue its collection efforts by mailing the July 17, 2008 and August 14, 2008 letters and contacting the Debtors by telephone. Each time RPS called, RPS received verbal notice of the bankruptcy from one of the Debtors and was told to contact Mr. Samsil. As a result of these repeated collection efforts, the Debtor and his wife suffered emotional distress. RPS has offered nothing to dispute the Debtor's allegations and did not appear at the final hearing. Based upon the Debtor's testimony and the evidence presented at the final hearing, this Court must conclude that RPS possessed full knowledge of the bankruptcy case and that its continued collection efforts were deliberate and willful violations of the automatic stay.

## B. Violation of the Discharge Injunction

The Bankruptcy Code also provides protection for a debtor upon the debtor's receiving a discharge of debt. A debtor's discharge "operates as an injunction" against any act "to collect, recover or offset any such debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). Upon the debtor's receiving a discharge, the injunction replaces and operates similarly to the automatic stay. See Matthews v. United States (In re Matthews), 184 B.R. 594, 599 (Bankr. S.D. Ala. 1995).

Unlike § 362(k), § 524(a)(2) does not provide for monetary relief upon a violation of the injunction. However, courts have held that violating the injunction "authorizes a court to hold a violating creditor in contempt and award attorneys fees." Matthews, 184 B.R. at 599 (citing In re Elias, 98 B.R. 332 (N.D. Ill. 1989) and Kolb v. United States (In re Kolb), 137 B.R. 29 (N.D. Ill. 1992)). The Eleventh Circuit, when determining a creditor's liability under § 524(a)(2), held that a court should look to its statutory contempt powers found in 11 U.S.C. § 105(a).[8] Hardy v. United States (In re Hardy), 97 F.3d 1384, 1389 (1996); McTyeire v. Hunt (In re McTyeire), 357 B.R. 898, 903 (Bankr. M.D. Ga. 2006). This statute authorizes the court "to award monetary and other forms of relief." Hardy, 97 F.3d at 1389-90 (citing Jove, 92 F.3d at 1553-54). In determining the appropriateness of damages, the Eleventh Circuit held that the creditor must have willfully violated the discharge injunction, and that the two-part willfulness test as used for stay violations also applied to discharge injunction violations. Id.; see Jove, 92 F.3d at 1555.

This Court, having already determined RPS willfully violated the automatic stay according to the Eleventh Circuit's two-part test, similarly finds RPS willfully violated the discharge injunction. This Court discharged the Debtors on October 2, 2008 and sent notice to RPS on

---

[8] 11 U.S.C. § 105(a) provides in part:
   The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

October 4, 2008. The collection letter sent by RPS to the Debtor dated November 6, 2008 directly violated the discharge injunction. Additionally, the phone calls the Debtor testified to receiving post-discharge from RPS regarding the Account also violated the injunction. The Debtor testified they received the last phone call a couple of weeks ago, and as with the other calls, they informed RPS of the bankruptcy case and told RPS to contact Mr. Samsil. This Court concludes that such actions by RPS demonstrate a deliberate and willful violation of the discharge injunction.

### C. Damages

#### 1. Actual Damages

Based upon the foregoing, the Court finds that the continued pursuit by RPS to collect on the Account without any regard to the automatic stay or the discharge injunction was a willful violation of 11 U.S.C. §§ 362(a)(6) and 524(a)(2). The Debtors are therefore entitled to actual damages, including attorney's fees, pursuant to 11 U.S.C. §§ 362(k)(1) and 105(a) due to the violations of the automatic stay and discharge injunction and the resulting emotional distress suffered by the Debtors. See Caffey, 384 B.R. at 309 ("emotional damages qualify as 'actual damages'"). The Court finds that the Debtors suffered actual damages in the amount of $2000.00 for the distress and worry the continued collection efforts of RPS caused the Debtors. The Court further awards costs and attorney's fees in the amount of $750.00.

#### 2. Punitive Damages

Section 362(k)(1) also grants this Court discretion to award punitive damages in "appropriate circumstances." 11 U.S.C. § 362(k)(1). Determining what constitutes "appropriate circumstances" is left to this Court's discretion. See Smith v. Homes Today, Inc., et al. (In re Smith), 296 B.R. 46, 56 (Bankr. M.D. Ala. 2003). Similarly, § 105(a) enables this Court to enter an order awarding punitive damages, so long as the order is "'necessary or appropriate' to carry out the provisions of

the Bankruptcy Code." See Hardy, 97 F.3d at 1389-90 (citing Jove, 92 F.3d at 1553-54).

RPS possessed actual knowledge of the Debtors' bankruptcy from shortly after the filing of the case all the way through and following the Debtors' discharge. At no point did RPS regard or respect the automatic stay or discharge injunction. These provisions are at the heart of the Bankruptcy Code's protective parameters for debtors, and such blatant disregard for the law as displayed by RPS will not be condoned by this Court.

Therefore, based upon the foregoing, the Court finds the Debtors are entitled to punitive damages of $2000.00. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that sanctions shall be and hereby are awarded against Regional Paramedical Services in favor of the Debtors, David and Sandra Byrd, in the amount of $2750.00 for actual damages and $2000.00 for punitive damages.

Dated this the 5th day of February, 2009.

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM: ejb

xc:    D. M. Samsil, attorney for the Debtors
       Regional Paramedical Services, P.O. Box 3147, Jasper, Alabama 35502-3147